DANIEL S. BASSETT ET AL., PROSECUTORS, v. THE MAYOR AND BOARD OF COMMISSIONERS OF THE BOROUGH OF WILDWOOD CREST, NEW JERSEY, ET AL., DEFENDANTS.

Argued January 19, 1939—Decided February 21, 1939.

Before Justices CASE, DONGES and PORTER.

For the prosecutors, *William Elmer Brown, Jr.*

For the borough of Wildwood Crest, *Palmer M. Way* and *S. Rusling Leap.*

PER CURIAM.

The writ of *certiorari* brings up a resolution passed on May 2d, 1938, by the Board of Commissioners of the borough

of Wildwood Crest directing that certain real estate consisting of four hundred and one lots located in that portion of the borough which is known as Wildwood Gables be sold at public sale on Friday, May 13th, 1938. The writ also calls for all other resolutions and proceedings incident to the sale.

The prosecutors argue under six points that the sale should be set aside for illegality. The first and second of these are that sufficient time did not elapse between the first and the second of the two newspaper advertisements of the sale. The two insertions were on May 5th and May 12th, respectively. The sale was on May 13th. The statutory requirement, 1937 Revision, 40:60-26, is that there shall be "public advertisement * * * by two insertions at least once a week during two consecutive weeks, the last publication to be not more than seven days prior to the sale." There were two insertions. The insertions were not within seven days of each other and therefore they were in separate weeks. The week in which one insertion occurred was the week following that in which the other occurred and therefore the weeks were consecutive. The last publication was not more than seven days prior to the sale. The statute was literally complied with unless it be, as prosecutors seem to contend, that the first advertisement must be inserted on a day that is two weeks before the sale, and that the second advertisement must be a full week before the sale. We do not so construe the statute. The provision of the statute is that the last publication shall be *not more* than seven days prior to the sale. That means, we think, that that publication shall be during the seven days preceding the sale. Otherwise the words "not more than" lose their significance and for clarity of expression should have been omitted. If the second publication was according to the statute, then the first, which was just a week before, was also. The original provision was in section 11, article XVIII, chapter 152, *Pamph. L.* 1917 (the Home Rule act), that the sale of the land should be "after public advertisement * * * at least once a week for two weeks prior to such sale." That language, which was repeated in the amendments contained within chapter 319, *Pamph. L.* 1920, *ch.* 131; *Pamph. L.*

1924, and chapter 87, *Pamph. L.* 1927, would have given better ground for the prosecutor's argument. By chapter 38, *Pamph. L.* 1929, the wording was changed to read as follows: "Public advertisement * * * for two insertions at least once a week during two consecutive calendar weeks, the last publication to be not more than seven days prior to the date of said sale." That wording was continued in the amendments contained within chapter 275, *Pamph. L.* 1930, and chapter 41, *Pamph. L.* 1933. The 1937 amendment omits the word "calendar" but is otherwise substantially the same. We conclude that the advertisement met the statutory requirements.

It is next said that the sale of the lots "as a whole in one tract or parcel" was not and could not be productive of the best price. The sale was of property owned by the borough and was not to foreclose outstanding interests. Therefore the rules applicable to judicial sales do not apply. The grouping of the lots for sale was a question of policy within the discretion of the governing body. We are unable to say on the evidence before us that the discretion was abused or that the proceeds of the sale would likely have been greater had the sale been of individual lots and not in bulk.

The next point is that the sale was illegal because a minimum price was imposed and no advance notice of that condition was given. We fail to perceive the materiality of the point even if the factual assumption upon which it rests had been proved. The figure of $7 per lot, which prosecutors suggest was the minimum price imposed, was exceeded by several bids. There was an actual sale at the price of $11 per lot. The point is without substance.

Prosecutor's next contention is that "the condition that the sale should be made subject to the approval of the governing body of the municipality was improper and illegal and the agreement of sale is void for that reason." It is true that the resolution of sale contained the provision that the sale was to be "subject to the approval and confirmation of the Board of Commissioners of the borough of Wildwood Crest," a provision which we conceive the commissioners had no legal

authority to impose. But there was no restriction placed upon the bidding. The property was actually struck off to the highest bidder, and there is no effort by the city commission to void the right of that bidder to have the conveyance made to him. *Cf. Buckley* v. *Mayor, &c., of Jersey City,* 105 *N. J. Eq.* 470. It is not made to appear that the objectionable provision in anywise affected the sale.

Finally, it is said that the sale is illegal and void because of the direct or indirect interest of the mayor of the borough therein. The point rests upon an assumption which runs throughout the entire argument that there was fraud, or favoritism amounting to fraud, on the part of the mayor and the commissioners whereby the proceedings were engineered into a sale to the purchaser, Probinsky, contrary to the rights of the public and of the prosecutors. We have carefully considered the evidence and conclude that the burden of proof, which rests upon the prosecutors, has not been met. The charges are not substantiated.

The writ will be dismissed, with costs.